**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>DAVID McFIELD | CRIMINAL ACTION<br>NO. 26-440-8 |

**Pappert, J.** **November 19, 2026**

# MEMORANDUM

David McField was indicted for conspiracy to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846. Magistrate Judge Cinquanto ordered his detention pending trial, and McField now appeals that decision and moves for pretrial release.[1] The Court held oral argument on November 17 and denies McField's motion.

## I

On March 16, 2026, FBI agents investigating McField's co-defendant, Gregory Jones, started receiving interceptions from bugs installed in Jones's vehicles. (Gov't's Mot. at 4, Dkt. No. 140.) The bugs captured McField, on audio and video, purportedly purchasing bulk amounts of cocaine from Jones on three occasions. (*Id.*)

The first instance was on April 29, 2026, where McField allegedly purchased one kilogram of cocaine from Jones. (*Id.*) On May 7th, McField allegedly exchanged cash for cocaine while also "boast[ing] to Jones about his prescription pill trafficking business," describing how he "imported fake Adderall pills on the dark web using

[1] McField's motion was styled as one to reopen the pretrial detention hearing in front of Judge Cinquanto pursuant to 18 U.S.C. § 3142(f). (Def.'s Mot. ¶ 3, Dkt. No. 134.) The Government interpreted the motion as an appeal of Judge Cinquanto's detention order pursuant to 18 U.S.C. § 3145(b). (Gov't's Mot. at 1, Dkt. No. 140.) At oral argument, counsel confirmed that he was appealing the detention order pursuant to § 3145(b). (Hr'g Tr. 3:16–4:25.)

blockchain and cryptocurrency" to sell to students at Temple, Drexel and Rowan Universities. (*Id.*; Gov't's Ex. A-1.) The third instance was on May 12th, where McField allegedly met with Jones to pay for cocaine. (Gov't's Mot. at 5.) The Government asserts that additional cameras installed in Jones's car "clearly depict" McField making the "cash payment to Jones" during the May 12th exchange. (*Id.*; Gov't's Ex. A-2.)

II

The Bail Reform Act provides a rebuttable presumption in favor of pretrial detention when, as here, "the judicial officer finds that there is probable cause to believe that the person committed [] an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3). McField faces a mandatory minimum sentence of ten years' imprisonment, and the Government estimates his guideline range to be between 188 and 235 months' imprisonment. *See* 21 U.S.C. § 846; 21 U.S.C. § 841(b)(1)(A); (Indictment Information Sheet at 2, Dkt. No. 46-10; Gov't's Mot. at 6.) There is probable cause to believe that McField violated 21 U.S.C. § 846 because of the grand jury's indictment and the facts proffered by the Government. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) (holding that an indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption). The Court must therefore presume "that no condition or combination of conditions will reasonably assure [McField's] appearance as required and the safety of the community" if he were released. 18 U.S.C. § 3142(e).

Once this presumption arises, the burden shifts to McField to "produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (per curiam). Section 3142(g) of the Bail Reform Act provides factors the Court must review to determine if McField has satisfied that burden:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including-
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person in the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

"The quantum of evidence required to rebut the presumption is not high. Rather, the defendant need only come forth with credible evidence conflicting the presumption." *United States v. Gibson*, 481 F. Supp. 2d 419, 422 (W.D. Pa. 2007); *see also Carbone*, 793 F.2d at 560. Even if a defendant rebuts the presumption of dangerousness or flight, however, the presumption does not disappear entirely but remains a factor to be considered among those weighed by the Court. *See, e.g., Carbone*, 793 F.2d at 560–61.

To order pretrial detention once the presumption has been rebutted, the Court must find by a preponderance of evidence that no conditions can reasonably assure the defendant's appearance at trial or by clear and convincing evidence that no combination of conditions will reasonably assure the safety of the community. *United States v. Perry*, 788 F.2d 100, 106 (3d Cir. 1986); *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Court reviews the factors and makes this determination *de novo*. *United States v. Delker*, 757 F.2d 1390, 1395 (3d Cir. 1985).

III

The first § 3142(g) factor, the nature and circumstances of the offense, weighs in favor of McField's detention. Congress considers drug crimes with a maximum penalty of more than ten years' imprisonment so serious that it imposed an evidentiary burden on persons seeking pretrial release. *See United States v. Strong*, 775 F.2d 504, 507 (3d Cir. 1985). If McField is convicted of conspiracy to distribute over 5 kilograms or more of cocaine, he faces a mandatory minimum sentence of ten years' and a maximum of life imprisonment with an estimated Guidelines range of 188 to 235 months. *See* 21 U.S.C. § 846; 21 U.S.C. § 841(b)(1)(A). (Hr'g Tr. 24:3–12.) The serious nature of McField's charged offense and his potential sentencing exposure gives him tremendous incentive to flee and strongly favors detention.

The weight of the evidence, the second factor, also supports detention. The Government represents that audio and video recordings show McField meeting with Jones on three occasions, with McField purchasing bulk amounts of cocaine or giving Jones large amounts of cash and, during one of the interactions, discussing his other venture of selling fake prescription pills to college students. (Hr'g Tr. 24:12–29:25;

Gov't's Exs. A-1 & A-2.) McField does not dispute the Government's evidence as it relates to the April 29th and May 12th instances but claims he was not the individual with Jones on May 7th—the interaction where McField is alleged to be discussing his prescription pill operation. (Def.'s Mot. ¶¶ 9a–c; Gov't's Mot. at 4; Hr'g Tr. 9:15–10:19.) While acknowledging the video does not show McField's face, the Government represents that the individual is McField based on the fact that the exchange took place down the block from McField's residence, the speaker had knowledge about the people that lived in the area and agents familiar with McField's voice identified him as the speaker, all of which was sufficient for the grand jury to return an indictment identifying McField as the individual with Jones that day. ("Overt Act 24," Indictment at 10–11; Gov't's Mot. at 5; Hr'g Tr. 25:7–23, 26:8–27:18.) Moreover, with or without the May 7th recording, there remains sufficient evidence based on the other exchanges to find that McField is a danger to the community. On April 29th, McField was shown on video, with audio, allegedly purchasing one kilogram of cocaine from Jones and making a large cash payment to Jones on May 12th. (Gov't's Mot. at 4–5; Hr'g Tr. 24:22–25, 27:15–28:5.)

The third factor, McField's personal history and characteristics, also warrants his continued detention. McField has two prior felony drug convictions for manufacturing and distributing narcotics, and he has a history of noncompliance with the terms of his probation and a failure to appear for a violation of probation hearing. (Gov't's Ex. A-4 at 4–5; Hr'g Tr. 30:1–19.) A warrant was ultimately issued because of his failure to appear. (Gov't's Ex. A-4 at 4–5.) As a result, the pretrial services officer concluded that McField "presents an elevated risk of nonappearance" and is a "high

danger to the community," ultimately recommending his detention pending trial. (*Id.* at 6.)

McField's alleged employment as a delivery driver for PDX Delivery Express does not help him. McField presented purported payment stubs showing he was working for PDX between July and September of 2026. (Def.'s Ex. C, Dkt. No. 134-3.) The Court gives little weight to this "job" for four reasons: (1) Pretrial Services could not verify the employment; (2) McField allegedly lined the job up at the end of June, coinciding with the June 26th arrests of three other members of the alleged conspiracy, including Jones; (3) the position was purportedly arranged for him by his second-cousin Rasheed Harris, whose address McField did not know; and (4) McField told Pretrial Services this was the first legitimate employment he has had in over twenty years. (Hr'g Tr. 14:23–15:20, 31:5–19; Gov't's Ex. A-4 at 2.) And despite allegedly working for three months over the course of twenty years, McField was able to buy a home and pay for his son's college tuition, daughter's private school tuition and foreign travel to the Dominican Republic, Mexico, Bahamas and Saint Lucia, all allegedly due to his sister's generosity. (Def.'s Mot. ¶ 14; Gov't's Ex. A-4 at 2; Hr'g Tr. 14:1–6, 32:4–22.)

McField nonetheless contends that his personal history demonstrates that he is not a flight risk. He claims he has significant ties to the Philadelphia area, his house may be used as collateral and he could return to his supposed job at PDX. (Def.'s Mot ¶¶ 13–14; Hr'g Tr. 15:21–16:18.) None of this is of any comfort. McField's criminal history, prior history of noncompliance, dubious employment history and extensive foreign travel, in light of the lengthy prison term he faces, strongly favor detention.

The fourth factor also favors Mcfield's continued detention. He is charged with conspiring to distribute large amounts of cocaine despite two prior felony drug convictions. He poses a danger to the community because of the likelihood that he will resume trafficking illicit drugs if he is released. *See Perry*, 788 F. 2d at 111 (danger to the community arises from the likelihood that the defendant will, if released, commit one of the proscribed federal offenses); *cf. Strong*, 775 F.2d at 507 (noting that statutory language unequivocally establishes that Congress intended to equate trafficking drugs with a danger to the community). That danger is heightened if McField is the individual captured on May 7th discussing a prescription pill operation at Philadelphia area universities, but the danger does not disappear if he is not.

McField cannot overcome the presumption in favor of his pretrial detention. Even if he had, the Government has shown by a preponderance of the evidence that no conditions can reasonably assure his appearance at trial and by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if he is released.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.